IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| REALTIME DATA, LLC D/B/A IXO, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION No. 6:08cv144 |
| v. § | |
| § | |
| PACKETEER, INC., et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Realtime Data, LLC d/b/a IXO's ("Realtime") Motion for Leave to File Amended Infringement Contentions ("Motion") (Doc. No. 322). Defendants have filed separate responses. Defendants F5 Networks ("F5") and Averitt Express, Inc. ("Averitt") have filed an Opposition to Plaintiff's Motion for Leave to File Amended Infringement Contentions ("F5 Response") (Doc. No. 342). Defendants F5 Networks, Inc., Averitt Express, Inc., and Intervener Comtech AHA, Corporation ("Comtech") (collectively, "F5 Defendants")have also filed an Opposition to Plaintiff's Motion for Leave to file Amended Infringement Contentions ("Comtech Response") (Doc. No. 357). Defendants Blue Coat Systems, Inc. ("Blue Coat"), Packeteer, Inc. ("Packeteer"), 7-Eleven, Inc. ("7-Eleven"), ABM-Industries, Inc. ("ABM"), ABM Janitorial Services–South Central, Inc. ("ABMJ"), and Build-A-Bear Workshop, Inc. ("BAB") (collectively, "Blue Coat Defendants") have filed an Opposition to Plaintiff's Motion for Leave to File Amended Infringement Contentions ("Blue Coat Response") (Doc. No. 360). Defendant Citrix Systems, Inc. ("Citrix") has filed an Opposition to Realtime's Motion for Leave to File Amended Infringement Contentions ("Citrix Response") (Doc. No. 367).[1]  Plaintiff has filed a Reply in Support of its

---

[1] Citrix originally filed its Response on June 18, 2009, (Doc. No. 361), but later corrected this original filing.

Motion for Leave to File Amended Infringement Contentions ("Reply") (Doc. No. 382). The Court held a hearing on the Motion on Monday, June 29, 2009. Having considered the parties' arguments, the Court hereby **DENIES** Plaintiff's Motion.

## BACKGROUND

On April 18, 2008, Plaintiff filed the instant action against Defendants Blue Coat, Packeteer, 7-Eleven, ABM, ABMJ, BAB, F5, Averitt, Comtech, and Citrix (collectively, "Defendants"), COMPLAINT (Doc. No. 1) at 2–7, alleging infringement of the nine asserted patents: 1) U.S. Patent No. 6,601,104 ("the '104 patent"); 2) U.S. Patent No. 6,604, 158 ("the '158 patent"); 3) U.S. Patent No. 7,321,937 ("the '937 patent"); 4) U.S. Patent No. 6,624,761 ("the '761 patent"); 5) U.S. Patent No. 7,161,506 ("the '506 patent"); 6) U.S. Patent No. 7,378,992 ("the '992 patent"); 7) U.S. Patent No. 7,352,300 ("the '300 patent"); 8) U.S. Patent No. 6,748,457 ("the '457 patent"); and 9) U.S. Patent No. 7,376,772 ("the '772 patent").[2] Plaintiff asserts over ninety claims of the nine asserted patents. *See* NOTICE OF FILING OF JOINT CLAIM CONSTRUCTION CHART, EXH. A (Doc. No. 274).

On June 1, 2009, Plaintiff filed the instant Motion requesting leave to amend its infringement contentions served on August 28, 2008 ("Original Infringement Contentions"). MOTION at 1–3. The Court held a hearing on the Motion on June 29, 2009. On July 1, 2009, the Court issued a summary Order denying Plaintiff's Motion. (Doc. No. 388). The Court now issues the instant Memorandum Opinion and Order regarding Plaintiff's Motion.

## LEGAL STANDARD

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer*

---

[2]Blue Coat was added as a Defendant when Plaintiff filed its First Amended Complaint. FIRST AMENDED COMPLAINT (Doc. No. 58) at 2. On May 19, 2009, Comtech intervened. (Doc. No. 312).

2

*Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (citations omitted). Patent Rule 3-1 provides that any party "claiming patent infringement must serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'" PATENT RULE 3-1. A plaintiff must "set forth specific theories of infringement at the outset of the case" utilizing all publicly available information. *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006) (citing *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)). By requiring a plaintiff to formulate, test, and crystallize their infringement contentions early in litigation, "the case takes a clear path, focusing discovery on building precise final infringement . . . and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005). Thus, the Patent Rules demonstrate high expectations as the plaintiffs' preparedness before bringing suit. *Am. Video Graphics*, 359 F. Supp. 2d at 560.

Patent Rule 3-6 sets forth the procedures for amending infringement contentions. This rule provides that infringement contentions "shall be deemed to be . . . final contentions." PATENT RULE 3-6(a). Leave to amend is required when a plaintiff seeks to amend or supplement the contentions, and a plaintiff must show good cause to amend. PATENT RULE 3-6(b); *Garmin, Ltd. v. TomTom, Inc.*, No. 2:06-cv-338, 2007 WL 2903843, *6 (E.D. Tex. Oct. 3, 2007). While district courts have discretion in ruling on untimely motions to amend infringement contentions, there are four factors that are pertinent to such rulings: 1) the explanation for the failure to meet the deadline; 2) the importance of the amendments; 3) potential prejudice in allowing the amendments; and 4) the availability of a continuance to cure such prejudices. *Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-cv-434, 2009 WL 166555, *1 (E.D. Tex. Jan. 16, 2009).

## DISCUSSION

By the instant Motion, Plaintiff seeks to withdraw certain claims from the case; add new infringement contentions concerning previously asserted claims; and provide more detail and evidentiary support for the Original Infringement Contentions. MOTION at 2. With regard to adding new contentions, Plaintiff seeks to assert certain patents against particular accused products that those patents were not previously asserted against. For example, Plaintiff now seeks to assert the '104 and '158 patents against F5's BIG-IP product. F5 RESPONSE at 2. In Plaintiff's Original Infringement Contentions, Plaintiff asserted that the BIG-IP product only infringed the '937, '772, and '457 patents. *Id.* at 9. Similarly, Plaintiff seeks to assert claims against Defendants whom those claims were not previously asserted against. Plaintiff now asserts that Citrix's Presentation Server/Xenapp product infringes a number of claims of the '506 patent that were not previously asserted against Citrix. CITRIX RESPONSE at 6. Plaintiff argues that leave should be granted because 1) the amendments are "necessitated by the enormity and late production of documents and availability of witnesses," 2) Plaintiff has worked diligently throughout discovery, 3) the amendments are critical to the enforcement of Plaintiff's patent rights; 4) the amendments do not prejudice Defendants; and 5) granting leave will not require a continuance. MOTION at 11.

**I.      Plaintiff's Explanation for the Failure to Meet the Deadline**

Plaintiff argues that the new and supplemental contentions ("Final Infringement Contentions") are based on confidential information not available when Realtime served the Original Infringement Contentions. MOTION at 2; REPLY at 1. Plaintiff asserts that it has worked diligently throughout discovery to review over five millions pages of document discovery and millions of pages of source code, despite the Defendants' refusal to identify the key documents that described how the Accused

Products work.[3] *Id.* at 1–3, 5. Based on this review, Plaintiff asserts that not only is it able to provide more detailed infringement contentions now, but through the course of discovery Plaintiff has uncovered additional infringement. MOTION at 11–12. Plaintiff contends that Defendants' technical documentation was necessary to identify the relevant portions of the source code, REPLY at 5, and that it was forced to wait until it took depositions throughout April and May of 2009 to "confirm" the new infringement theories. MOTION at 6–7, 12. Thus, Plaintiff argues that the delay in seeking leave resulted from the enormity and belatedness of Defendants' production. MOTION at 11–12.

Defendant F5 argues that Plaintiff has had access to the pertinent information since at least as early as October 23, 2007, when Plaintiff could have downloaded detailed datasheets, white papers, and development-level documentation from F5's website. F5 RESPONSE at 7. Moreover, F5 argues that aside from the publicly available information, F5 produced all relevant information by October 30, 2008. *Id.*

The Blue Coat Defendants argue that the proposed amendments are based on information that was publicly available when Plaintiff brought the instant action and therefore should have been included in the Original Infringement Contentions. BLUE COAT RESPONSE at 1, 3, 5–7. Moreover, the Blue Coat Defendants assert that all of its source code was disclosed on October 30, 2008. *Id.* at 2, 7, 13. Despite this early production, the Blue Coat Defendants contend that Plaintiff did not examine any of the code until January 7, 2009, with the next review not occurring until March 18, 2009. *Id.* The Blue Coat Defendants also argue that in December 2008, they provided Plaintiff with specific Bates numbers for key technical documentation describing how the byte caching compression features worked. *Id.* The Blue Coat Defendants also contend that the deposition testimony of Mr. Long and Mr. Madhavi that

---

[3]In support, Plaintiff lists the number of pages of documents produced by each Defendant, as well as the number of attorneys employed to obtain and review these documents. MOTION at 4, 6.

is cited in the Final Infringement Contentions merely confirms information that was publicly available when Plaintiff filed suit. *Id.* at 7, 13.

Citrix argues that despite the fact that it made its source code available to Plaintiff in October 2008, Plaintiff did not access the code until two months later. CITRIX RESPONSE at 2, 11. Citrix also argues that Plaintiff has failed to point to a single piece of evidence that it did not have in October 2008 that was necessary to the amendments. *Id.*

The Federal Circuit has held that "good cause" to amend infringement contentions requires a showing of diligence.

> [W]e see nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence. If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation.

*O2 Micro*, 467 F.3d at 1366. While a plaintiff may require time "to digest and marshal [the] evidence, develop the new theory, and then chronicle the complete theory in contentions," this period of time must be reasonable. *O2 Micro*, 467 F.3d at 1366 (affirming district court's finding that a three month delay with lack of adequate explanation for the delay showed a lack of diligence).

Defendants began producing source code and other confidential information as early as October 2008. MOTION at 4; F5 RESPONSE at 7; BLUE COAT RESPONSE at 2, 7, 13; CITRIX RESPONSE at 2, 11. The Court held a *Markman* hearing on April 9, 2009. DCO at 4. Plaintiff filed the instant Motion on June 1, 2009. Just weeks later, discovery was scheduled to close on July, 13, 2009, with dispositive motions due August 10, 2009. *Id.* at 3. Moreover, the pretrial conference is scheduled for December 17, 2009, with trial to begin January 11, 2010. *Id.* at 1–2.

With regard to Blue Coat, Plaintiff indicates that it learned that the ProxySG product infringed claims 18–20 of the '937 patent only after a review of Blue Coat's confidential documents and source code. MOTION at 12. Plaintiff does not dispute Blue Coat provided confidential documents and source code between October 2008 and December 2008. BLUE COAT RESPONSE at 2. In December 2008, Blue Coat even provided Plaintiff with specific Bates numbers for key technical documentation. *Id.* Similarly, Plaintiff indicates that it learned that Citrix's Presentation Server/XenApp products infringed the '761, '506, and '937 patents and that F5's BIG-IP and WebAccelerator products infringed the '104 and '158 patents only after reviewing the relevant confidential source code and documents. MOTION at 13. Plaintiff does not dispute that Citrix provided the documents and source code in October 2008, and Citrix reminded Plaintiff that these disclosures were sufficient to show how the Accused Products work. CITRIX RESPONSE at 4. F5 provided the documents and source code in October 2008, as well. F5 RESPONSE at 7. While Plaintiff does accuse Defendants of dilatory discovery practices, Plaintiff fails to point to a single piece of evidence produced after December 2008 that it needed for the proposed amendments. Moreover, most of the Defendants argue that information supporting many of Plaintiff's proposed amendments was publicly available prior to the instant lawsuit being filed. F5 RESPONSE at 3; COMTECH RESPONSE at 10; BLUE COAT RESPONSE at 3. Yet, the instant Motion was not filed until June 1, 2009, MOTION at 1, when discovery and initial trial preparation deadlines were quickly approaching. DOCKET CONTROL ORDER (Doc. No. 128) at 3–4.

Plaintiff served its Original Infringement Contentions on August 28, 2008. MOTION at 3. Over nine months later, Plaintiff filed the instant Motion asking to significantly change its Original Infringement Contentions. Plaintiff did not suggest to Defendants that it would seek leave to amend

until April 2009—over seven months after serving the Original Infringement Contentions. BLUE COAT RESPONSE at 2. Waiting nine months after serving the Original Infringement Contentions to seek leave to amend is not a reasonable period of time, especially taking into account that this case is set for trial less than two years after filing. *See* DCO at 1–7; *see also O2 Micro*, 467 F.3d at 1366 (affirming district court's finding that a three month delay with lack of adequate explanation for the delay showed a lack of diligence).

Plaintiff argues that the enormity and delay of Defendants' productions were the cause for the nine month delay. MOTION at 11–12. Yet, as previously noted, Plaintiff fails to point to a single piece of documentary evidence that was disclosed late and is pertinent to the amendments. Instead, Plaintiff argues that it had to "confirm" the new infringement theories that arose from the source code and technical documentation by taking depositions of Defendants' 30(b)(6) technical witnesses. MOTION at 12. These depositions were taken throughout April and May, and Plaintiff argues that Defendants' delayed in making these witnesses available. *Id.* at 6–7. However, as the Blue Coat Defendants point out, Plaintiff did not notice the depositions of these witnesses until March 20, 2009. BLUE COAT RESPONSE at 13.

Contrary to Plaintiff's argument that it needed to "confirm" new theories of infringement, infringement contentions are intended to frame the scope of the case in order to provide for "full, timely discovery and [to] provide parties with adequate notice and information with which to litigate their case." *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007). Moreover, the Patent Rules require early disclosure of infringement contentions in order to allow defendants to discover the plaintiff's theories of infringement early in the case because, in practice, it has been

8

difficult to attain such information through traditional discovery.[4] *See O2 Micro*, 467 F.3d at 1365–66 (noting that providing answers to mechanisms such as contention interrogatories is often postponed until the close of discovery). Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof. *See Am. Video Graphics*, 359 F. Supp. 2d 558, 560–61 (E.D. Tex. 2005) (noting that there are times when a plaintiff's preparation of infringement contentions is restricted by a defendant's sole possession of information relevant to infringement and ordering the plaintiff to supplement its infringement contentions with specific references to source code within thirty days of gaining access to the code). While infringement contentions must be reasonably precise and detailed based on all publicly available information in order to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement because infringement contentions "are not meant to provide a forum for litigation of the substantive issues."[5] *Linex Tech., Inc. v. Belkin Intern., Inc.*, — F. Supp. 2d —, 2008 WL 4372708, *2 (E.D. Tex. 2008) (ordering the plaintiff to supplement its infringement contentions to include all non-proprietary information about each accused product and particularly point to each component or portion of the accused product that meets each limitation of the asserted claims); *see also* PATENT RULE 3-1(a)–(f). "Confirming" theories of infringement is a task left to discovery, while the preparation and supplementation of infringement contentions is a matter of pleading and merely notifies a defendant of the asserted theories of infringement in order

---

[4] While *O2 Micro* was a case from the Northern District of California regarding their Local Patent Rules, the Local Patent Rules of the Eastern District of Texas were modeled on the Patent Rules adopted by the Northern District of California. *Nike*, 479 F. Supp. 2d at 667 n.2.

[5] As the Court has previously noted in its Order on the motions to strike (Doc. No. 427), to the extent that the identification of additional evidence in support of a plaintiff's infringement contentions assists in the communication of notice of such contentions, identification of evidence obtained during discovery would appear to more effectively achieve such notice.

to provide adequate notice and streamline discovery. *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-cv-559, 2009 WL 81874, *3 (E.D. Tex. 2009) (rejecting plaintiff's argument that it needed to confirm which products infringed before seeking leave to amend its infringement contentions); *see also Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-cv-131, 2004 WL 5633736, *1 (E.D. Tex. 2004) (noting that infringement contentions in a patent case are in the nature of pleadings). Thus, Plaintiff was not required to wait until it "confirmed" new theories of infringement before filing the instant Motion.

Plaintiff repeatedly notes the enormity of Defendants' production as a basis for the late request and as evidence of Plaintiff's diligence. *See, e.g.,* MOTION at 6 (indicating that it "has devoted significant resources to obtaining, searching, and reviewing all of the Defendants' discovery" and "has employed over a dozen attorneys on a steady basis to first obtain, and then review, the Defendants' discovery"); *id.* at 12 (noting that plaintiff "has diligently engaged in fact discovery with all 13 of the Defendants . . . [d]espite the Defendants' production of over 5 million pages of documents and source code"). While the Court is sympathetic to the time and effort required to sift through such voluminous records, Plaintiff cannot use the complexity of this case as an excuse for its lack of diligence or initial preparation. Plaintiff affirmatively took on the task of managing and prosecuting a lawsuit with twelve defendants, nine patents, and over one-hundred claims.[6] *See* MEMORANDUM OPINION AND ORDER (Doc. No. 248) at 2. Furthermore, Plaintiff's characterization of the lawsuit cuts both ways. With a lawsuit of great complexity, it is all the more imperative to avoid springing new claims on Defendants at a late stage.

---

[6] While there are currently fourteen Defendants, Plaintiff originally filed suit against only twelve. COMPLAINT at 1–7.

It is also notable that Plaintiff chose to litigate this case in this District. *See Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*, 597 F. Supp. 2d 706, 714 (E.D. Tex. 2009) (noting that this District has an average time to trial of eighteen months); *Acceleron, LLC v. Egenera, Inc.*, — F. Supp. 2d —, 2009 WL 1606961, *6 (E.D. Tex. June 9, 2009); *Konami Digital Entertainment Co., Ltd. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, *8 (E.D. Tex. March 23, 2009) (noting quick time to trial in this District). Plaintiff never requested an extended schedule, nor sought assistance from the Court in resolving discovery disputes that were prolonging disclosures until May 19, 2009—thirteen days before filing the instant Motion.[7] *See generally* REALTIME DATA, LLC'S MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 2–4 BY CITRIX SYSTEMS, INC. (Doc. No. 313). If important and required disclosures were not being made, as Plaintiff argues, a motion to compel would have been justified. *See, e.g.*, MOTION at 3 (referring to "Defendants' numerous attempts to prolong discovery"); *id.* at 4 (noting that Plaintiff "had to engage in numerous conversations with the Defendants concerning their failure to produce all relevant documents"); *id.* at 5 (indicating that certain documents were not produced until "late this Spring"). Thus, Plaintiff cannot assert the complexity of this case as a reason for the late request to amend. When Plaintiff filed the instant lawsuit, it should have been prepared for the aggressive discovery and trial schedule necessitated by filing a multi-party, multi-patent case in this District. Thus, while the Court acknowledges the time and effort that all parties have put into this case, Plaintiff has not shown diligence, nor a reasonable explanation for the lack thereof in filing the

---

[7]On March 24, 2009, Plaintiff initiated a discovery hotline hearing, requesting an order compelling Defendants Blue Coat and Packeteer to produce all the names and available dates for all 30(b)(6) witnesses at once. ORDER RE: HOTLINE HEARING UNDER THE LOCAL RULES FOR THE EASTERN DISTRICT OF TEXAS (Doc. No. 260) at 1–2. However, this hearing did not result from a lack of timely disclosure by the Defendants, but from Plaintiff's desire to avoid further "unnecessary expense" because Plaintiff prepared for a deposition noticed only a week ahead of time before learning that the deponent would not testify concerning certain expected topics. *Id.* The Court denied the request. *Id.*

instant Motion. The Court finds that the period of nine months from serving the Original Infringement Contentions to filing the instant Motion was not reasonable.

## II. Importance of the Amendments

Plaintiff argues that the amendments are important because they are necessary to completely resolve the disputes between the parties and adjudicate Plaintiff's claims in a single trial. MOTION at 14. Plaintiff contends that excluding the additional infringement contentions after the "great expense undertaken in discovery" would unnecessarily waste time and money. *Id.* at 14. The Blue Coat Defendants argue that denying Plaintiff's motion will not deprive Plaintiff of claims because Plaintiff could file another lawsuit. *Id.* at 11.

While all parties to the litigation—including the Court—have expended significant time and effort, the amendments Plaintiff proposes at this point could easily result in greater expense than if a separate case were filed. Given the late emergence of many of these disputes, the relationship between this case and the new claims is not great enough to justify inclusion in this case. The Court acknowledges that the proposed amendments are important to a degree. However, Plaintiff's lack of diligence in seeking leave to amend, combined with the severe prejudice Defendants would face, as will be discussed in the following section, outweighs the importance of allowing the proposed amendments.

## III. Potential Prejudice in Allowing the Amendments

Plaintiff argues that the Final Infringement Contentions do not add any new claims or products to the litigation. MOTION at 2, 14. Plaintiff asserts that as a result of the withdrawn claims, the total number of asserted claims and number of Accused Products will be reduced. *Id.* Plaintiff contends that any prejudice suffered by Defendants would result from Defendants' "recalcitrant and

12

sometimes abusive discovery practices." MOTION at 15. Plaintiff also argues that the Original Infringement Contentions "should have been sufficient to place the Defendants on notice that [Plaintiff] intended to accuse all of the Defendants' [of] infringement of all of the patents-in-suit, rather than just the claims that [Plaintiff] was able to identify as infringed by reviewing the public information." REPLY at 3.

F5 argues that it would suffer severe prejudice if Plaintiff is allowed to assert the '104 and '158 patents against its BigIP product—its core product—because these patents were previously only asserted against F5's Wanjet product—a product with only one percent of the BigIP sales. F5 RESPONSE at 2, 9. As a result, F5 indicates that it spent little time focusing on the '104 and '158 patents. *Id.* Further, F5 argues that the patents that were previously asserted against the BigIP product issued four years after the '104 and '158 patents, so granting leave would substantially increase F5's potential liability. *Id.* F5 also argues that allowing Plaintiff to now add additional models of the BigIP product that were not previously alleged to infringe would be unfair. *Id.* at 3. F5 also argues that the amendments would severely prejudice its' customers—Averitt and Cavium. *Id.* at 9–10.

The Blue Coat Defendants argue that the proposed amendments allege for the first time that the ProxySG device infringes the '937 patent. BLUE COAT RESPONSE at 1. Moreover, the Blue Coat Defendants assert that the Plaintiff seeks to accuse a new feature of the ProxySG device. *Id.* The Blue Coat Defendants also argue that Plaintiff now asserts new theories of infringement regarding the August 14, 2009Packetshaper product. *Id.* As a result, the Blue Coat Defendants argue that because they relied on Plaintiff's Original Infringement Contentions in formulating litigation

strategy, claim construction positions, and invalidity strategy, allowing the proposed amendments would prejudice the Defendants in a number of ways. *Id.* at 8.

Citrix argues that the amendments assert new patents and theories of infringement regarding Citrix's accused products. CITRIX RESPONSE at 1, 6–8. Citrix argues that if the Court grants Plaintiff's Motion, Citrix will have to 1) reevaluate Plaintiff' infringement contentions; 2) consider the new evidence Plaintiff now asserts; 3) conduct a new prior art search; and 4) update its invalidity contentions and supplement its expert's report. *Id.* at 13.

Although Plaintiff argues that new claims will not be added to the litigation, it fails to recognize the severe prejudice each Defendant will suffer as a result of changing the asserted claims against that particular Defendant, given the late stage of the proceedings. As previously noted, Plaintiff never previously asserted the '104 and '158 patents against F5's BIG-IP product, and Plaintiff now seeks to assert these patents against this accused product. F5 RESPONSE at 2. In Plaintiff's Original Infringement Contentions, Plaintiff asserted that the BIG-IP product only infringed the '937, '772, and '457 patents. *Id.* at 9. Similarly, Plaintiff now asserts that Citrix's Presentation Server/Xenapp product infringes a number of claims of the '506 patent that were not previously asserted against Citrix. CITRIX RESPONSE at 6. Plaintiff also seeks to assert the '937 patent against Blue Coat's ProxySG product, though Plaintiff previously only asserted the '104 and '158 patents against this product. BLUE COAT RESPONSE at 1. These are just a few examples of the changes Plaintiff proposes. Defendants will similarly be prejudiced if this Court were to allow Plaintiff to change the claims it asserted against each Accused Product. The Defendants have justifiably relied on Plaintiff's Original Infringement Contentions as a framework for proceeding through discovery and preparing to file dispositive motions and for trial. At the time the instant

Motion was filed, the parties had already proceeded through nine months of discovery. A *Markman* hearing was held in April. This lawsuit has reached a stage where changing the framework for this litigation would be significantly prejudicial to Defendants. Moreover, the substantial changes that Plaintiff proposes would exponentially increase such prejudice.[8]

Plaintiff argues that the Original Infringement Contentions "should have been sufficient to place the Defendants on notice that [Plaintiff] intended to accuse all of the Defendants' [of] infringement of all of the patents-in-suit, rather than just the claims that [Plaintiff] was able to identify as infringed by reviewing the public information. REPLY at 3. This argument is contrary to Patent Rule 3-1. Patent Rule 3-1 requires a plaintiff to serve infringement contentions that disclose all required information "separately for each" defendant. The information that is required includes: 1) each claim of each patent in suit that is allegedly infringed by each opposing party; 2) each accused product of each opposing party of which the party is aware, including name or model number if possible or otherwise as specifically as possible; 3) a chart identifying where each element of each asserted claim is found in each accused product; and 4) whether each element of each asserted claim is alleged to be literally present or present under the doctrine of equivalents. In other words, separate infringement contentions for each Defendant that spell out every patent and every claim that Plaintiff intends to assert against that particular Defendant are required. If Plaintiff had filed separate lawsuits against each Defendant and was now seeking to amend as it is here, Plaintiff would be adding new patents, new claims, and new accused products to these cases. The fact that

---

[8] As Judge Clark has pointed out, late changes such as those proposed by Plaintiff would encourage objectionable litigation tactics:
> Lawyers who attempted to analyze the possible range of claims against a client would be punished while slothful dullards would be rewarded. Parties would be encouraged to adopt a "rolling" approach to infringement and invalidity contentions in the hope of hiding their true intentions until late in a case. This would thwart the purpose of the local patent rules.

*Nike, Inc. v. Adidas Am. Inc.*, 79 F. Supp. 2d 664, 670 (E.D. Tex. 2007).

15

this is a multi-defendant case neither relieves Plaintiff of the burden imparted by Patent Rule 3-1, nor allows the switching of patents and claims asserted against each Defendant at this late stage in the litigation. As a result of the late stage of the proceedings and the significant changes Plaintiff proposes, Defendants would suffer severe prejudice if Plaintiff were allowed to amend.[9]

## IV.    Availability of a Continuance to Cure Such Prejudice

Plaintiff asserts that a continuance would not be required should leave be granted due to the substantial similarity between the Original Infringement Contentions and the Final Infringement Contentions. MOTION at 15. However, Plaintiff indicates that it would be "amenable" to a continuance. *Id.* F5 argues that both the Court and the parties have expended substantial time, effort, and resources on this case and a continuance would not cure the prejudice Defendants will face. F5 RESPONSE at 10. Citrix argues that if Plaintiff is allowed to amend Plaintiff will have the advantage of resetting its entire case after Defendants have taken invalidity positions and after the Court has issued a claim construction order. CITRIX RESPONSE at 15.

While a continuance would give the parties more time to prepare for dispositive motions and trial based on Plaintiff's Final Infringement Contentions, the requested changes are significant enough that the parties would essentially have to continue litigating this case, while beginning discovery anew on the new patents, claims, and accused products. As a result, a continuance would cure some of the prejudice, but even a substantial continuance would not cure enough prejudice to justify the changes Plaintiff proposes.

## **CONCLUSION**

---

[9]To the extent that Plaintiff seeks to drop certain patents, claims, or accused products from suit, Defendants do not oppose this request. Thus, Plaintiff may proceed in this case without further asserting those claims.

In sum, the Court finds that Plaintiff has failed to show either diligence or a reasonable explanation for the delayed filing of the instant Motion. Further, while the amendments are important to a degree, the prejudice Defendants would suffer if Plaintiff were allowed to amend is substantial. Finally, an extended continuance would not alleviate the substantial prejudice Defendants would suffer. Thus, Plaintiff has failed to show "good cause" to amend, and for all the foregoing reasons, the Court hereby **DENIES** Plaintiff's Motion.

**So ORDERED and SIGNED this 18th day of August, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE